UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD L. JOHNSON and RONALD DSOUZA,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

    Defendant.

Case No.: 13-cv-10146

Hon. Patrick J. Duggan

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

This action, brought against Defendant Wells Fargo Bank, National Association, arises out of a residential mortgage foreclosure.  Plaintiffs, who are proceeding *in pro per*, seek a preliminary injunction halting eviction proceedings due to Defendant's failure to comply with a federal home loan modification program called Home Affordable Modification Program or "HAMP."  At the motion hearing held on February 7, 2013, Plaintiff Edward Johnson asked for additional time to file a reply brief, which the Court granted.  In doing so, the Court indicated that it would decide the motion on the briefs pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  The reply brief was timely filed.  Upon review, the Court is not persuaded that the issuance of a preliminary injunction is proper and therefore denies Plaintiffs' motion.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

On May 20, 2007, Plaintiff Ronald Dsouza purchased a parcel of real property located at 494 Pleasant Avenue, Birmingham, Michigan, 48009-1525 (the "property")

from the previous owners. (Def.'s Resp. 1.) In order to finance the $580,000 purchase, Dsouza received a purchase money mortgage from Defendant in the amount of $522,000. (*Id.*; Mortgage, Def.'s Resp., Ex. 2.) Plaintiff Edward Johnson rents the property from Dsouza and resides at the premises with his wife and children. (Am. Compl. ¶¶ 12, 17.) Johnson is not a party to the mortgage.

Plaintiffs concede that the "mortgage loan securing the rental property is delinquent." (*Id.* ¶ 14.) Plaintiffs fail to mention, however, that the property was foreclosed and sold at a sheriff's sale on January 5, 2010. (Def.'s Resp. 1; Sheriff's Deed, Def.'s Resp., Ex. 3.) Defendant was the high bidder at the sale. (*Id.*) Pursuant to Michigan law, the statutory redemption period expired on July 5, 2010. Mich. Comp. Laws § 600.3240(8).

Defendant then commenced summary proceedings in the state district court to evict Dsouza and all other occupants from the property, and on February 3, 2012, Defendant obtained a judgment for possession of the property.[1] (Def.'s Resp. 1, Ex. 5.) On March 13, 2012, before the judgment was effectuated, Johnson filed a petition for bankruptcy.[2] (Def.'s Resp. 2, Ex. 6.) Ultimately, the Bankruptcy Court entered an order terminating the Automatic Stay on the property and permitting Defendant "to commence or continue to enforce its federal and/or state law rights to the property." (5/15/2012

---

[1] In the Court's Judgment, Case No. 1035045, Johnson is listed as Dsouza's attorney. (Def.'s Resp., Ex. 5.)
[2] Dsouza filed for bankruptcy on March 24, 2010 and Johnson previously filed on June 16, 2011. Johnson's June 2011 bankruptcy petition was dismissed. Johnson's 2012 bankruptcy filing is thus the third bankruptcy proceeding affecting the subject property. (Wells Fargo's Mot. for Relief from Automatic Stay, No. 12-bk-46155.)

Order, Def.'s Resp. Ex. 7.) On October 3, 2012, Johnson's bankruptcy was dismissed as a bad faith filing and the court entered an order prohibiting Johnson from filing a bankruptcy petition for the next eight years. (10/3/2012 Order, Def.'s Resp. Ex. 8.) Soon thereafter, on October 24, 2012, the State of Michigan Attorney Disciple Board suspended Johnson from practicing law for a period of 180 days.

On December 26, 2012, Plaintiffs filed a Complaint and Motion to Stay Eviction in Oakland County Circuit Court. Plaintiffs filed an Amended Complaint on January 2, 2013.³ On January 2, 2013, the state court granted Plaintiffs' Motion for an Ex Parte Restraining Order and stayed eviction proceedings until further order of the Court. The state court scheduled a hearing for a preliminary injunction on January 16, 2013. Defendant removed the case to this Court on January 15, 2013, on the grounds of diversity jurisdiction. 28 U.S.C. §§ 1332, 1441, 1446.

Plaintiffs' Amended Complaint alleges six causes of action: (1) Count I: "Breach of Consent Agreement and Service Participation Agreement"; (2) Count II: "Michigan Mortgage Brokers, Lenders and Service[r]s Act"; (3) Count III: Fraud; (4) Count IV: Innocent Misrepresentation; (5) Count V: Negligence; and (6) Count VI: "Violation of the Michigan Consumer Protection Act." Plaintiffs seek damages and rescission of the foreclosure sale.

---

³ Federal Rule of Civil Procedure 11(a) specifically provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." The Rule further indicates that a court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a). Because only Johnson signed the Amended Complaint, it is deficient as to Dsouza.

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction. A motion hearing was held on February 7, 2013.[4] At this hearing, Johnson requested to have an opportunity to file a Reply Brief, which the Court granted. A timely reply was filed on February 20, 2013.[5]

## II. STANDARD OF REVIEW

When a party moves for a preliminary injunction, district courts consider four factors to determine whether to grant relief: (1) the likelihood of success on the merits of the action; (2) the irreparable harm which could result without the requested relief; (3) the possibility of substantial harm to others; and (4) the impact on the public interest. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985). "Although these four factors must be considered in assessing a request for preliminary injunction, the four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity." *Id.*

"[T]he preliminary injunction is an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.'" *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). The party moving for the injunction has the burden to show that the

---

[4] Also on February 7, 2013, Plaintiff Johnson filed a Motion to Remand. The Court denied this motion in an Opinion and Order dated February 15, 2013.
[5] Plaintiffs also filed a Motion to Amend on February 20, 2013.

circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment." *Leary*, 228 F.3d at 739.

Although the Court must balance and weigh the relevant preliminary injunction considerations, "a finding that there is no likelihood of irreparable harm...or no likelihood of success on the merits...is usually fatal." *CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 2011 U.S. Dist. LEXIS 22000, 2011 WL 833802, at *12 (E.D. Mich. 2011) (citations omitted). "It follows that a district court need not address all the preliminary injunction factors where fewer are dispositive of the issue." *Id.*

### III. ANALYSIS

Plaintiffs seek a preliminary injunction staying eviction proceedings. However, Plaintiffs have failed to demonstrate that a preliminary injunction is proper because they have failed to show that they are likely to succeed on the merits of the numerous causes of action contained in their Amended Complaint. The Court addresses (1) the likelihood of Plaintiffs receiving the relief sought, which includes rescission of the now complete foreclosure sale, and (2) the likelihood of success on the merits for each cause of action asserted in Plaintiffs' Amended Complaint. Because the Court finds that Plaintiffs' claims lack merit, the Court declines to address the other preliminary injunction factors.

**A.     Likelihood of Rescission of Completed Foreclosure Sale**

The mortgage in the instant matter was foreclosed over three years ago on January 5, 2010. (Answer ¶ 13; Sheriff's Deed, Removal Petition, Ex. C.) Because the

redemption period has expired in this case, Plaintiffs must make a plausible showing of fraud or irregularity to state a claim for the relief they seek, which includes an order from the Court rescinding the foreclosure sale. As discussed with respect to each individual count below, Plaintiffs have not alleged conduct by Defendant that merits the Court tolling the limitations period or setting aside the completed foreclosure sale. In other words, Plaintiffs simply have not alleged the existence of a fraud or irregularity sufficient to set aside the sale.

**B.     Likelihood of Success on the Individual Causes of Action Asserted in Plaintiffs' Amended Complaint**

*1.     Count I – Breach of Consent Agreement and Service Participation Agreement*

To prevail on a breach of contract claim, a plaintiff must (1) demonstrate the existence of a valid contract, (2) establish the contract's terms, (3) present evidence of a breach of those terms, and (4) show an injury causally related to that breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). Plaintiffs allege that "Defendant breached the subject consent judgment and the SPA by not following the requirements of HAMP regarding the subject property." (Am. Compl. ¶ 28.) Plaintiffs also appear to allege that "the parties entered in[to] an agreement to review Plaintiffs' mortgage for modification" and that Defendant violated this contractual agreement by failing to modify the mortgage at issue.[6] (*Id.* ¶ 24.) However, none of these purported agreements constitutes a binding contract on the parties in the instant matter.

---

[6] In Plaintiffs' Proposed Amended Complaint, which Plaintiffs attached to both their Reply Brief in Support of their Motion for Preliminary Injunction and to their Motion to

6

*a.     Breach of Consent Judgment*

The consent decree, entered by Judge Bates of the United States District Court for the District of Columbia in the case of *United States v. Bank of America Corp., et. al*, No. 12-0361, referenced by Plaintiffs in paragraph 19 of their Amended Complaint does not constitute a valid contract.[7] Neither Plaintiffs nor Wells Fargo Bank were parties to the consent decree. Plaintiffs offer no binding legal authority and no argument in support of their attempt to act as a third-party beneficiary to the consent order. *See Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992) ("A consent decree is not enforceable . . . by those who are not parties to it.") (quotation omitted).

*b.     Breach of SPA*

Plaintiffs' arguments regarding the Service Provider Agreement ("SPA") are also flawed. Plaintiffs appear to argue that Defendant breached the SPA between Defendant and the Federal National Mortgage Association, or Fannie Mae, by not following the requirements of HAMP and that this breach is actionable because Plaintiffs are third-party beneficiaries to this agreement. (Pls.' Br. in Supp. 10.)

Plaintiffs' breach of contract cause of action is nothing more than a disguised HAMP claim as they are suing to seek enforcement of an agreement which itself requires Defendant to comply with the HAMP guidelines. There is no private right of action provided under HAMP and courts in the Eastern District of Michigan have rejected

---

Amend, Plaintiffs added a new Count I entitled "Breach of the Independent Foreclosure Review Process."

[7] In Plaintiffs' Reply Brief, they refer to a different "Consent Judgment" entered into by Wells Fargo on February 9, 2012. (Pls.' Br. in Reply 1-2.) The Court declines to address arguments raised for the first time in Reply.

7

attempts to bring claims against a foreclosing party under HAMP.  *See, e.g.*, *Hart v. Countrywide Homes Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Barber v. Bank of America, N.A.*, No. 11-15449, 2013 U.S. Dist. LEXIS 12347, at *20 (E.D. Mich. Jan 30, 2013) (unpublished).  Plaintiffs' breach of contract claim fails because "[t]he terms of the SPA are not negotiable, and a suit by an alleged third-party beneficiary to enforce the HAMP agreement would essentially be a suit to enforce the statute itself." *Barber*, No. 11-15449, 2013 U.S. Dist. LEXIS 12347, at *20.

The Court also notes that Plaintiffs' Reply Brief states that Defendant entered into the SPA on March 16, 2010.  (Pls.' Br. in Reply 1.)  The property at issue was foreclosed on January 5, 2010, over two months before the SPA became operative.  Thus, even if Plaintiffs were third-party beneficiaries, which they are not, the contract allegedly breached was not in existence at the time the property was foreclosed.

*c.*     *Breach of Independent Review*

Lastly, Plaintiffs allege that "the parties entered . . . an agreement to review Plaintiffs' mortgage for modification[]" on December 31, 2012.  (Am. Compl. ¶ 24.)  However, the document referred to in the Amended Complaint is a Request for Independent Foreclosure Review form.  (Pls.' Mot. Prelim. Inj., Ex. 1.)  This form states that "if the foreclosure process was active on your primary residence between January 1, 2009 and December 31, 2010, you are eligible to request an Independent Foreclosure review that may result in compensation or other remedy." (*Id.*)

The request for Independent Foreclosure Review is *not* a binding contract and therefore, Plaintiffs have no cause of action based on their submission of this form.

Moreover, and contrary to Plaintiffs' assertions, the Independent Foreclosure Review is not an agreement to review mortgages for modification. (Am. Compl. ¶ 24.) In fact, Plaintiffs do not point to any language in the Independent Foreclosure Review settlement providing for a loan modification. The Independent Foreclosure Review Settlement Frequently Asked Questions document Plaintiffs attached to their Reply Brief indicates that "[n]early 4.2 million eligible borrowers will receive cash payment as a result of the Independent Foreclosure Review settlement[]" and that the "settlement ensures that more borrowers will receive monetary compensation more quickly." (Pls.' Br. in Reply, Ex. 5, at 2.)

One example of a situation leading to an injury provided on the Request for Independent Foreclosure Review form is that "[y]ou requested assistance/modification, submitted complete documents on time, and were waiting for a decision when the foreclosure sale occurred." (Request for Review Form, Pls.' Mot. Prelim. Inj., Ex. 1.) Nowhere in their Amended Complaint do Plaintiffs assert that they applied for a loan modification. Rather, they plead some facts indicating that they might be entitled to a HAMP modification and state that they "never received a Trial Period Plan or [modification] under HAMP." (Am. Compl. ¶ 16.) Interestingly, the Independent Foreclosure Review form submitted by Dsouza provides that he does not believe that he was denied a modification when he qualified under the applicable program rules. (Request for Review Form, Pls.' Mot. Prelim. Inj., Ex. 1, at 3.)

Importantly, only "[b]orrowers whose primary residence was in foreclosure between the dates of January 1, 2009 and December 31, 2010 . . . will receive a cash

payment. . . ." (*Id.*) Dsouza, the borrower under the terms of the mortgage agreement, was not residing in the property at the time of foreclosure; rather, he was renting it to Johnson. The Independent Foreclosure Review form submitted by Dsouza – the document that according to Plaintiffs formed a binding contract – explicitly provides that the property was not the borrower's primary residence. (*Id.* at 2.)

Accordingly, Plaintiffs are not likely to succeed on the merits of their breach of contract claim.

### 2. *Count II – MMBLSA*

Plaintiffs allege that Defendant violated the MMBLSA by failing to comply with HAMP. (Am. Compl. ¶ 33.) Plaintiffs have no success on succeeding on the merits on this claim because the MMBLSA does not apply to a "[d]epository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." Mich. Comp. Laws § 445.1675(a). A "depository financial institution" is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." *Id.* § 445.1651a(f). Defendant, a national banking association chartered under the National Bank Act, is exempt from the MMBLSA. *Baumgartner v. Wells Fargo Bank, N.A.*, No. 11-14065, 2012 U.S. Dist. LEXIS 83254, at *15-16 (E.D. Mich. June 15, 2011) (unpublished) (holding that Wells Fargo is exempt from the MMBLSA).

Accordingly, Plaintiffs have no chance of succeeding on the merits of Count II.

### *3. Counts III & IV – Fraud and Innocent Misrepresentation*

Count III of Plaintiffs' Amended Complaint alleges fraud. Plaintiff contends that "Defendant misrepresented material information regarding the mortgage transaction, including but not limited to[,] stating that it followed the requirements of HAMP." (Am. Compl. ¶ 35.) Count IV purports to state a claim for innocent misrepresentation. Plaintiffs allege that "Defendant made a representation of one or more material facts, including but not limited to the specific terms of HAMP." (*Id.* ¶ 40.) As explained more fully below, the Court finds that Plaintiffs have failed to state a plausible claim for relief in light of the heightened pleading standards of Federal Rule of Civil Procedure 9(b). As such, the fraud allegations do not warrant setting the foreclosure aside.

To prevail on a fraud claim in Michigan, a plaintiff is required to prove: (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (internal quotations omitted). To recover on the innocent misrepresentation claim, Plaintiffs must show that they "justifiably relied to their detriment on information prepared without reasonable care by one who owed [Plaintiffs] a duty of care." *Unibar Maint. Servs. v. Saigh*, 283 Mich. App. 609, 621, 769 N.W.2d 911, 919 (2009).

11

Rule 9(b) provides that "[i]n alleging fraud[8] or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a claimant must "(1) specify the statements the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Louisiana School Employees' Ret. Sys. v. Ernst & Young, L.L.P.*, 662 F.3d 471, 478 (6th Cir. 2010).

Liberally construing the Amended Complaint, it is evident that Plaintiffs fail to state an actionable claim of fraud or innocent misrepresentation. Besides alleging that Defendant made misrepresentations regarding HAMP, the Amended Complaint contains no factual matter supporting a finding of fraud or innocent misrepresentation. Plaintiffs' Reply Brief explains that Defendant misrepresented that "it would evaluate all foreclosure[s] that occurred in 2009 and 2010." (Pls.' Br. in Reply 8.) Specifically, the speaker identified as making these misrepresentations in Plaintiffs' Reply Brief are "Michael Heid, President of Defendant's Home Mortgage Division and other agents and/or employees of the Defendant." (*Id.*) These statements were purportedly made on February 12, 2012 and were fraudulent because "Defendant has not done 'all' it can to review the subject foreclosure." (*Id.* at 8-9.)

---

[8] An innocent misrepresentation claim "sounds in fraud." *Smith v. Bank of Am. Corp.*, No. 11-CV-1406, 2012 U.S. App. LEXIS 12504, at *6-7 (6th Cir. June 18, 2012) (unpublished) (citation omitted). When a "claim is said to . . . 'sound in fraud,' [] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Hennigan v. Gen. Elec. Co.*, 09-11912, 2010 U.S. Dist. LEXIS 103090, at *14 (E.D. Mich. Sept, 29, 2010) (unpublished) (Roberts, J.) (quotation omitted). Thus, to survive a motion to dismiss, Plaintiffs' fraud allegations must adhere to the pleading requirements contained in Rule 9(b).

Putting aside the fact that the alleged fraud and misrepresentation occurred subsequent to the foreclosure at issue, which undermines the veracity of Plaintiffs' claims that they relied on the misrepresentations, (*id.* at 9), Plaintiffs have not stated a claim for either fraud or innocent misrepresentation.  Dsouza submitted the Request for Independent Review on December 31, 2012.  Plaintiffs do not attempt to explain how Defendant's statements were false in light of the short period of time that has lapsed since the submission of the Request for Review.

Lastly, the Court notes that Plaintiffs' fraud and innocent misrepresentation claims appear to be nothing more than disguised HAMP claims.  As discussed in relation to Count I, there is no private cause of action for violation of the HAMP guidelines.  Accordingly, Plaintiffs have no likelihood of succeeding on the merits of their fraud and innocent misrepresentation causes of action.

4.   *Count V – Negligence*

Plaintiffs have not stated a viable claim for negligence, as Count V is also a disguised HAMP claim.  Plaintiffs assert that "Defendant failed to follow the requirements of HAMP[,] causing substantial damage to Plaintiffs."  (Am. Compl. ¶ 47.)  Plaintiffs also allege that "Defendant materially breached the terms of the mentioned mortgage agreement by causing Plaintiffs to be negligently reviewed under the HAMP requirements[.] . . . As a direct and proximate result of the negligently performed HAMP review[,] Plaintiffs were substantially damaged."  (*Id.* ¶ 49.)

Plaintiffs' negligence claim fails because Plaintiffs have not alleged a prima facie case.  To state a negligence claim, a plaintiff must allege four elements: duty, breach,

13

causation, and damages. *Lelito v. Monroe*, 273 Mich. App. 416, 418-19, 729 N.W.2d 564, 566 (2006). "The Michigan Supreme Court has held that in 'tort actions based on a contract,'" such as the case here, "'courts should use a 'separate and distinct mode of analysis.'" *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *21-22 (E.D. Mich. Nov. 1, 2011) (unpublished) (quoting *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 467, 683 N.W.2d 587, 592 (2004)). In this analysis, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id.*

Here, Plaintiffs have not alleged that Defendant owed them a duty separate and distinct from the contractual obligations. In fact, the purported breach arises from "the terms of the . . . mortgage agreement." (Am. Compl. ¶ 49.) These allegations simply establish a duty that arose, if at all, pursuant to the note and mortgage.

Because Plaintiffs have not adequately pled the existence of a duty, they have not and cannot state a claim for negligence. As such, Plaintiffs are not likely to succeed on the merits of their negligence claim.

5.    *Count VI - MCPA*

Plaintiffs allege that Defendant's HAMP violations violated the MCPA. (Am. Compl. 8.) This is yet another attempt to enforce HAMP by artful pleading.

Moreover, and without delving into the mechanics of the MCPA too deeply, "[b]oth Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage transactions."

14

*Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *15-16 (E.D. Mich. Jan. 6, 2012) (unpublished) (citation omitted); *see also Newton v. Bank West*, 262 Mich. App. 434, 442, 686 N.W.2d 491, 494 (2004); *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003), *aff'd*, 172 F. App'x 652 (6th Cir. 2006).

Plaintiffs have no chance of succeeding on the merits on this claim because the MCPA's strictures do not apply to the mortgage transaction at issue.

### IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiffs' Motion for Preliminary Injunction must be denied because Plaintiffs' Amended Complaint fails to state a claim for relief for any of the six counts included therein.

Accordingly,

**IT IS ORDERED THAT**, Plaintiffs' Motion for Preliminary Injunction is **DENIED**.


Date:  March 6, 2013                              s/PATRICK J. DUGGAN
                                                  UNITED STATES DISTRICT JUDGE

Copies to:

Edward L. Johnson
494 Pleasant Street
Birmingham, MI 48009

Ronald Dsouza
494 Pleasant Street
Birmingham, MI 48009

Patrick C. Lannen
Matthew J. Boettcher